UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT EMERSON FELIX,<br><br>    Plaintiff,<br><br>  v.<br><br>CLANDENIN, *et al.*,<br><br>    Defendants. | Case No. 1:23-cv-00839-KES-BAM (PC)<br><br>FINDINGS AND RECOMMENDATIONS TO DISMISS ACTION, WITH PREJUDICE, FOR FAILURE TO STATE A CLAIM, FAILURE TO OBEY COURT ORDER, AND FAILURE TO PROSECUTE<br><br>(ECF No. 21)<br><br>**FOURTEEN (14) DAY DEADLINE** |

**I. Background**

Plaintiff Scott Emerson Felix ("Plaintiff") is a civil detainee proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. Individuals detained pursuant to California Welfare and Institutions Code § 6600 *et seq.* are civil detainees and are not prisoners within the meaning of the Prison Litigation Reform Act. *Page v. Torrey*, 201 F.3d 1136, 1140 (9th Cir. 2000).

On June 14, 2024, the Court issued a screening order granting Plaintiff leave to file a first amended complaint or a notice of voluntary dismissal within thirty (30) days. (ECF No. 21.) The Court expressly warned Plaintiff that the failure to comply with the Court's order would result in a recommendation for dismissal of this action, with prejudice. (*Id.* at 10.) Plaintiff failed to file an amended complaint or otherwise communicate with the Court, and the deadline to do so has

1

expired.

## II. Failure to State a Claim

### A. Screening Requirement

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

### B. Plaintiff's Allegations

Plaintiff is currently housed at Coalinga State Hospital ("CSH"), where the events in the complaint are alleged to have occurred. Plaintiff names the following defendants: (1) Stephanie Clandenin, Director of the Department of State Hospitals ("DSH"); (2) Brandon Price, Executive Director of CSH; and (3) Joel Castaneda, Hospital Administrator of CSH. All defendants are sued in their official capacities.

///

1    Plaintiff alleges as follows:

2    On or about January 24, 2023, Defendants Castaneda and Price issued a Memorandum (attached as Exhibit A) outlining how CSH "has purchased Norix Anti-ligature furniture to complete a facility wide furniture retrofit . . . The removal of old furniture and installation of new will happen in two phases over a two-year time period . . . Once the installation is complete, the patient population will be allowed to retain any existing personal items/plastic bins as long as they are able to fit inside their designated furniture storage areas."

The current furniture provided to CSH patients within their personal living area[1] includes: (1) one chair with a padded seat and back; (2) one bed approximately 35 inches wide, 74 inches long, and 15 inches high; (3) one floor shelf approximately 14 inches x 36 inches x 26 inches (7.6 cubic feet total); (4) one wardrobe approximately 20 inches deep x 34 inches wide x 62 inches high (approximately 24 cubic feet total); (5) one wall shelf approximately 14 inches x 19 inches x 39 inches (approximately 6 cubic feet total); and (6) one table approximately 19 inches x 23 inches (approximately 4 square feet).

Patients are allowed to store items below their bed (resulting in approximately 19 cubic feet of storage space), above their wardrobe (resulting in approximately 7.5 cubic feet of storage space), and above their wall shelf within 18 inches of the ceiling (resulting in approximately 6 cubic feet of storage space). Thus, presently there is a relatively comfortable chair and approximately 70 cubic feet of storage space within each CSH detainee's personal living area.

The Norix ("Norix") Anti-ligature furniture is hard plastic. The chairs are not padded in any manner, causing the user to swiftly experience discomfort that, through time, progresses to pain. The dimensions of the Norix furniture are as follows: (1) bed, 32 inches wide x 23 inches high x 78 inches long; (2) cabinet, 22 inches wide x 23 inches deep x 56 inches high; (3) table, 35.5 inches wide x 23.8 inches deep; (4) book shelf, 27 inches wide x 11 inches deep x 17 inches high; and (5) book case, 26 inches wide x 34 inches high x 16 inches deep.

///

---

[1] The area within either the 4-man dormitory or the single-man room that CSH designates as the location where SVPA detainees sleep and store their personal property.

1    The under bed storage is approximately 9 cubic feet, the cabinet and book shelf have
2 sloped tops which prevents any storage on top. The total storage afforded by the Norix furniture
3 is approximately 36 square feet, which is approximately half of the present storage space
4 permissible.
5    Presently in CSH's 4-man dorms, on each half of the dorm the tall wardrobes are placed
6 side-by-side. There is a substantial reduction in the privacy afforded to CSH detainees by the
7 Norix furniture in comparison to the present furniture. (See Exhibit B – "4 Man Dorm Layout" /
8 "Single Man Dorm Layout.")
9    CSH patients have a patient advocacy group entitled "Civil Detainee's Advisory Council"
10 ("CDAC"). On or about February 6, 2023, CDAC posed a number of questions to CSH
11 administration which outlined some of the problems with the replacement of the present CSH
12 furniture with the Norix furniture. These included concerns regarding the reduction of storage
13 space, the reduction in open floor space, and a reduction in privacy. (See Exhibit B.)
14    Irrespective of the unique safety and security issues that exist depending on various CSH
15 detainees' behavior and treatment needs, the highly restrictive and uncomfortable Norix furniture
16 is being installed on all CSH units. There are some CSH patients who engage in behavior that
17 poses a danger to other CSH patients and/or CSH staff ("Group 1"), while most CSH patients do
18 not engage in behavior that poses a danger to other CSH patients and/or CSH staff ("Group 2").
19    Plaintiff would fall within Group 2, as evidenced by the fact that CSH has placed him on a
20 "Residential Recovery Unit," which are CSH's least restrictive units. Despite these two groups of
21 patients' different safety, security, and treatment needs, Defendants have provided no indication
22 as to whether any safety and security concerns posed by Group 1 form the foundation of an
23 alleged need for the Norix furniture, and assuming said alleged need exists, Defendants have
24 provided no indication as to why it is being imposed on Group 2 detainees.
25    Defendants have provided no reason for removing the present furniture and installing the
26 Norix furniture. The present furniture was installed in about 2016. For the approximately 7 years
27 since the installation, no agent of DSH, including Defendants, has provided any indication to
28 Plaintiff that the present furniture subjects either the patients or CSH detainees to any safety or

security risks.

Each of the Defendants had a duty to ensure that all SVPA legislation civil detainees, including Plaintiff, were housed in a manner that was consistent with their Fourteenth Amendment substantive due process rights. Any restrictions said detainees are subject to at CSH are to be consistent with the four legitimate non-punitive interests: (i) ensuring the public was protected from individuals committing sexually violent offenses; (ii) ensuring the detainees were afforded adequate mental health treatment; (iii) ensuring the effective management of the civil detention facility; and (iv) ensuring the safety and security of the civil detention facility. Additionally, any conditions that relate to any of these four interests must not be excessive in relation to its purpose.

Defendants have not provided any reason consistent with any of the above legitimate interests for: (1) removing the current padded chairs and providing hard plastic Norix chairs; (2) reducing the CSH detainees' storage space by approximately 50% through the installation of Norix furniture; or (3) reducing the CSH detainees' privacy through the installation of Norix furniture. There is no evident non-punitive reason for this restrictive condition, making it excessively restrictive in relation to the permissible legitimate non-punitive interests.

If Defendants allege a safety and security risk exists with Group 1 patients that justifies the need for the installation of Norix furniture, said justification would not explain why the Norix furniture installation is required for Group 2 patients. The safety and security reason would subsequently be excessively restrictive in relation to the permissible legitimate non-punitive interests.

Due to the facts noted above, Plaintiff has experienced emotional suffering.

Defendants Clandenin, Price, and Castaneda violated Plaintiff's Fourteenth Amendment substantive due process right to not be subjected to punitive conditions of confinement while being civilly detained pursuant to the SVPA at CSH. As a direct result of these Defendants' failures, Plaintiff was subjected to emotional suffering.

Defendants Clandenin and Price were responsible for the policies and customs giving rise to the injuries alleged by Plaintiff and their official policies, customs, practices, training, and/or

1 lack thereof are the cause of the harms which resulted in Plaintiff's Fourteenth Amendment
2 constitutional violations. Defendants Clandenin and Price failed to both create policies that
3 ensured that SVPA legislation civil detainees at CSH, including Plaintiff, would not be subjected
4 to conditions of confinement that were excessively restrictive in relation to any non-punitive
5 legitimate interests consistent with the Fourteenth Amendment, and failed to take reasonable steps
6 to ensure that those policies were adhered to by staff tasked with the day-to-day operations of
7 CSH.

Defendant Castaneda knew or ought to have known that CSH lacks the facilities, customs, and practices to house SVPA civil detainees, including Plaintiff, in a manner consistent with the Fourteenth Amendment. Defendant Castaneda failed to acknowledge that CSH's decision to install Norix furniture would violate Plaintiff's Fourteenth Amendment rights and failed to actively take steps to ensure that Plaintiff was housed in a manner consistent with the Fourteenth Amendment.

Plaintiff requests the following relief: injunctive relief that would prohibit Defendants and/or agents of Defendants from installing Norix furniture on any unit where Plaintiff resides, during the pendency of this lawsuit and in the future; a declaratory judgment that installation of Norix furniture on any unit where Plaintiff resides is contrary to Plaintiff's Fourteenth Amendment rights; and appointment of counsel when the Court deems necessary.

**C. Discussion**

Plaintiff's complaint fails state a cognizable claim for relief. As Plaintiff is proceeding *pro se*, he will be granted leave to amend the complaint to the extent that he can do so in good faith. To assist Plaintiff, the Court will provide the pleading and legal standards that appear relevant to his claims.

**1. Official Capacity**

Plaintiff asserts that he is suing Defendants Clandenin, Price, and Castaneda in their official capacities.

"Suits against state officials in their official capacity . . . should be treated as suits against the State." *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Holley v. Cal. Dep't of Corr.*, 599 F.3d 1108,

1111 (9th Cir. 2010) (treating prisoner's suit against state officials in their official capacities as a suit against the state of California). An official-capacity suit "represent[s] only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citation omitted). Such a suit "is not a suit against the official personally, for the real party in interest is the entity." *Id.* at 166.

A claim for prospective injunctive relief against a state official in his or her official capacity is not barred by the Eleventh Amendment provided the official has authority to implement the requested relief. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 92 (1989). Moreover, "[a] plaintiff seeking injunctive relief against the State is not required to allege a named official's personal involvement in the acts of omissions constituting the alleged constitutional violation." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1127 (9th Cir. 2013); *see Rouser v. White*, 707 F. Supp. 2d 1055, 1066 (E.D. Cal. 2010) (proper defendant for injunctive relief in suit seeking implementation of CDCR policy is the CDCR Secretary in his official capacity). Instead, Plaintiff need only identify the law or policy challenged as a constitutional violation and name the official or officials within the entity who is or are alleged to have a "fairly direct" connection with the enforcement of that policy, *see Ex Parte Young*, 209 U.S. 123, 157 (1908), and can appropriately respond to injunctive relief. *Hartmann*, 707 F.3d at 1127 (citation omitted); *see also Pouncil v. Tilton*, 704 F.3d 568, 576 (9th Cir. 2012).

Here, Plaintiff alleges that each Defendant, in their official capacity, was responsible in some part for the decision to replace the current CSH furniture with the Norix furniture. Plaintiff also claims only injunctive and declaratory relief, but no damages. As such, Plaintiff may proceed on any cognizable claims found against Defendants in their official capacities.

### 2. Fourteenth Amendment – Conditions of Confinement

To state a claim that the conditions of his confinement violate his due process rights under the Fourteenth Amendment, Plaintiff must allege facts showing the conditions amount to "punishment." *Jones v. Blanas*, 393 F.3d 918, 932 (9th Cir. 2004). Punitive conditions of confinement are those that are either expressly intended to punish or those that are "excessive in relation to the alternative purpose [for confinement]." *Demery v. Arpaio*, 378 F.3d 1020, 1028

(9th Cir. 2004) (quoting *Bell v. Wolfish*, 441 U.S. 520, 538 (1979)).  "Persons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Youngberg v. Romeo*, 457 U.S. 307, 321–22 (1982).  A civilly committed individual's right to constitutionally adequate conditions is protected by the substantive component of the Due Process Clause of the Fourteenth Amendment.  *Id.* at 315.  To determine whether these substantive due process rights have been violated, the Court must balance the individual's "liberty interests against the relevant state interests." *Id.* at 320–21.  The proper standard in determining whether a condition or restriction is constitutional for a civilly committed individual is whether "professional judgment in fact was exercised," rather than the "deliberate indifference" standard used for Eighth Amendment cruel and unusual punishment claims brought by prisoners.  *Id.* at 312 n.11, 322.  "[D]ecisions made by the appropriate professional are entitled to a presumption of correctness," and "liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Id.* at 323–24.

The Ninth Circuit has analyzed such conditions of confinement claims under an objective deliberate indifference standard.  *See Castro v. Cty. of L.A.*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc) (adopting objective deliberate indifference standard based on *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), to evaluate failure to protect claim brought by pretrial detainee). That standard demands that: (1) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) by not taking such measures, the defendant caused the plaintiff's injuries.  *Castro*, 833 F.3d at 1071.

Plaintiff fails to state a cognizable conditions of confinement claim.  At most, Plaintiff alleges that installation of the Norix furniture will cause him physical discomfort because he will

8

be seated on a hard plastic chair instead of a padded chair, reduce his available storage space by approximately 50% to only 36 cubic feet,[2] and reduce his privacy. Plaintiff repeatedly alleges that the only injury he will sustain is emotional suffering.

Plaintiff has not made a showing that the installation of the Norix furniture will amount to "punishment" or that any decision was made by Defendants that would put Plaintiff at "substantial risk of suffering serious harm."

### 3. Injunctive Relief

With respect to Plaintiff's requests for injunctive relief, "[P]laintiff must show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." *Jones v. City of Los Angeles*, 444 F.3d 1118, 1126 (9th Cir. 2006) (internal quotations and citations omitted). "The key issue is whether the plaintiff is 'likely to suffer future injury." *Jones*, 444 F.3d at 1126. As discussed above, Plaintiff has failed to show that he will suffer any future injury.

Moreover, where, as here, "a plaintiff seeks a mandatory preliminary injunction that goes beyond maintaining the status quo pendente lite, 'courts should be extremely cautious' about issuing a preliminary injunction and should not grant such relief unless the facts and law clearly favor the plaintiff." *Committee of Central American Refugees v. I.N.S.*, 795 F.2d 1434, 1441 (9th Cir. 1986), quoting *Martin v. International Olympic Committee*, 740 F.2d 670, 675 (9th Cir. 1984). The facts and the law as presented in the complaint and in Plaintiff's separately-filed motion for a temporary restraining order do not warrant such relief. (*See* ECF Nos. 9, 12, 20.)

### 4. Declaratory Relief

To the extent Plaintiff's complaint seeks a declaratory judgment, it is unnecessary. "A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest." *Eccles v. Peoples Bank of Lakewood Village*, 333 U.S. 426, 431 (1948). "Declaratory relief should be denied when it will neither serve a useful

---

[2] The exhibits attached to the complaint suggest that CSH is only required to provide a minimum of 30 cubic feet of storage space. (ECF No. 1, p. 18.)

1  purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and
2  afford relief from the uncertainty and controversy faced by the parties." *United States v.*
3  *Washington*, 759 F.2d 1353, 1357 (9th Cir. 1985).  If this action reaches trial and the jury returns
4  a verdict in favor of Plaintiff, then that verdict will be a finding that Plaintiff's constitutional
5  rights were violated.  Accordingly, a declaration that any defendant violated Plaintiff's rights is
6  unnecessary.

**III.     Failure to Prosecute and Failure to Obey a Court Order**

     **A.     Legal Standard**

Local Rule 110 provides that "[f]ailure . . . of a party to comply with these Rules or with any order of the Court may be grounds for imposition by the Court of any and all sanctions . . . within the inherent power of the Court."  District courts have the inherent power to control their dockets and "[i]n the exercise of that power they may impose sanctions including, where appropriate, . . . dismissal." *Thompson v. Hous. Auth.*, 782 F.2d 829, 831 (9th Cir. 1986).  A court may dismiss an action, with prejudice, based on a party's failure to prosecute an action, failure to obey a court order, or failure to comply with local rules. *See, e.g.*, *Ghazali v. Moran*, 46 F.3d 52, 53–54 (9th Cir. 1995) (dismissal for noncompliance with local rule); *Ferdik v. Bonzelet*, 963 F.2d 1258, 1260–61 (9th Cir. 1992) (dismissal for failure to comply with an order requiring amendment of complaint); *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 130–33 (9th Cir. 1987) (dismissal for failure to comply with court order).

In determining whether to dismiss an action, the Court must consider several factors: (1) the public's interest in expeditious resolution of litigation; (2) the Court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions. *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986); *Carey v. King*, 856 F.2d 1439, 1440 (9th Cir. 1988).

     **B.     Discussion**

Here, Plaintiff's first amended complaint is overdue, and he has failed to comply with the Court's order.  The Court cannot effectively manage its docket if Plaintiff ceases litigating his case.  Thus, the Court finds that both the first and second factors weigh in favor of dismissal.

The third factor, risk of prejudice to defendant, also weighs in favor of dismissal, since a presumption of injury arises from the occurrence of unreasonable delay in prosecuting an action. *Anderson v. Air W.*, 542 F.2d 522, 524 (9th Cir. 1976). The fourth factor usually weighs against dismissal because public policy favors disposition on the merits. *Pagtalunan v. Galaza*, 291 F.3d 639, 643 (9th Cir. 2002). However, "this factor lends little support to a party whose responsibility it is to move a case toward disposition on the merits but whose conduct impedes progress in that direction," which is the case here. *In re Phenylpropanolamine (PPA) Products Liability Litigation*, 460 F.3d 1217, 1228 (9th Cir. 2006) (citation omitted).

Finally, the Court's warning to a party that failure to obey the court's order will result in dismissal satisfies the "considerations of the alternatives" requirement. *Ferdik*, 963 F.2d at 1262; *Malone*, 833 at 132–33; *Henderson*, 779 F.2d at 1424. The Court's June 14, 2024 screening order expressly warned Plaintiff that his failure to file an amended complaint would result in a recommendation of dismissal of this action, with prejudice, for failure to obey a court order and for failure to state a claim. (ECF No. 21, p. 10.) Thus, Plaintiff had adequate warning that dismissal could result from his noncompliance.

Additionally, at this stage in the proceedings there is little available to the Court that would constitute a satisfactory lesser sanction while protecting the Court from further unnecessary expenditure of its scarce resources. As Plaintiff is proceeding *in forma pauperis* in this action, it appears that monetary sanctions will be of little use and the preclusion of evidence or witnesses is likely to have no effect given that Plaintiff has ceased litigating his case.

**IV.     Recommendation**

Accordingly, the Court finds that dismissal is the appropriate sanction and HEREBY RECOMMENDS that this action be dismissed, with prejudice, for failure to state a claim pursuant to 28 U.S.C. § 1915A, for failure to obey a court order, and for Plaintiff's failure to prosecute this action.

These Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendation, Plaintiff may file written

objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **July 31, 2024**          /s/ *Barbara A. McAuliffe*
                                  UNITED STATES MAGISTRATE JUDGE